IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS L. TAYLOR III, § | |
| § | |
| Plaintiff, § | |
| § Civil Action No. 3:20-CV-0393-D | |
| VS. § | |
| § | |
| REYMOND TREVINO, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Thomas L. Taylor III, the court-appointed temporary receiver ("Receiver") in a Securities and Exchange Commission ("SEC") civil enforcement action ("Enforcement Action"), brings this suit asserting claims for avoidance of fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. §§ 24.001-24.013 (West 2018), and for unjust enrichment based on defendants' alleged participation in the fraudulent scheme of Christopher A. Faulkner ("Faulkner"). Defendants Derek Taylor ("Derek")[1] and Alden Adams, LLC ("Alden") move to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b). For the reasons that follow, the court grants the motion, but also grants the Receiver leave to replead.

---

[1] Because plaintiff Thomas L. Taylor III and defendant Derek Taylor have the same surname, the court for clarity will refer to Derek Taylor as "Derek."

I

In June 2016 the SEC brought the Enforcement Action against Faulkner and others, alleging that Faulkner and his codefendants orchestrated a massive fraudulent scheme, defrauding investors of millions of dollars through the offer and sale of oil and gas-related securities.[2] In August 2017 the court appointed the Receiver for the estates of Faulkner, Breitling Energy Corporation ("BECC"), Breitling Oil & Gas Corporation ("BOG"), Breitling Royalties Corporation ("BRC"), Crude Energy, LLC and Crude Royalties, LLC (both referred to collectively as "Crude"), and Patriot Energy, Inc. ("Patriot"), among others. In February 2020 the Receiver filed this lawsuit against Derek, Alden, and other individuals and entities on behalf of receivership entities BOG, BRC, Crude, and Patriot.

According to the complaint, Faulkner and his Enforcement Action codefendants perpetrated their scheme primarily through the fraudulent offer and sale of oil and gas-related securities by BOG, BRC, BECC, Crude, and Patriot (collectively, "Breitling"). The terms of Breitling's securities offerings were provided to public investors through offering materials in the form of private placement memoranda, confidential placement memoranda, and other marketing brochures ("Offering Memoranda") that were replete with material

---

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the Receiver, accepts all well-pleaded factual allegations, and draws all reasonable inferences in the Receiver's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

misrepresentations and omissions of material facts.[3] BOG also regularly sold to investors a larger percentage of working interests in a prospect than it actually owned; the Breitling Entities extensively commingled the assets they received from investors; Faulkner used the funds in the Breitling Entities' operating accounts to pay and reimburse himself for personal expenses; and Faulkner misappropriated millions of dollars from the Breitling Entities.

Enforcement Action defendants Parker Hallam ("Hallam") and Dustin Michael Miller Rodriguez ("Miller") led Breitling's sales efforts and managed its sales staff. Hallam, Miller, and their staff, which included Derek and codefendants Reymond Trevino, Nathan Madu, and Okoto Okpo (collectively, the "Individual Defendants") disseminated Breitling's materially misleading Offering Memoranda and reiterated the misrepresentations therein as part of their sales efforts to investors. For example, although investors were led to believe that transaction-based compensation (i.e., commissions) would not be paid in connection with the sale of the royalty interests, defendants typically received a specific percentage of every dollar ultimately invested (typically 10%) in addition to their fixed salary of $800 payable every two weeks. Moreover, in connection with their sales pitches as part of the unregistered offerings, Breitling's sales staff (including the Individual Defendants) failed to sufficiently determine the accreditation status of investors.

---

[3]For example, instead of including estimates for drilling and completion costs provided by the operators who actually drilled and completed oil and gas wells, Faulkner grossly inflated these estimates in the Offering Memoranda provided to investors so that Breitling could pocket millions of dollars in inflated "profits." He also neglected to include his affiliation with Crude in Crude's offering materials.

From February 2011 to February 2016, Derek and Alden[4] received a total of $171,557.72 in compensation from BOG, BRC, Crude, and Patriot. The Receiver alleges that, because these transfers were made with actual intent to hinder, delay, or defraud creditors of the Breitling entities, and because defendants cannot establish that they received the transfers with objective good faith or in exchange for reasonably equivalent value, they are avoidable. The Receiver brings claims in this action against Derek, Alden, and others for avoidance of fraudulent transfers under TUFTA, and, alternatively, for unjust enrichment under Texas law. Derek and Alden move to dismiss under Rules 12(b)(6) and 9(b). The Receiver opposes the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Derek and Alden's motion to dismiss, the Receiver must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

---

[4] In their reply, Derek and Alden maintain that Alden is the LLC through which Derek was paid his salary.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 ( N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724). More colloquially, plaintiff must plead the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell*

- 5 -

*Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

III

The court begins with the Receiver's TUFTA claim.

A

To establish a claim under § 24.005 of TUFTA, a plaintiff must prove that "(1) [he] is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)). Fraudulent conveyance claims under § 24.005(a)(1) require actual intent and are likely subject to Rule 9(b). *See Clapper v. Am. Realty Invs., Inc.*, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018) (Fitzwater, J.) (explaining that, although an open question in the Fifth Circuit, several members of this court have applied the enhanced pleading requirements of Rule 9(b) where plaintiffs seek to establish the actual intent of the debtor), *recons. denied*, 2018 WL 6011182 (N.D. Tex. Nov. 16, 2018).

B

Derek and Alden move to dismiss the TUFTA claim under Rules 12(b)(6) and 9(b), contending that the Receiver has not specified a single transfer made to Derek or Alden; has not pleaded facts showing that each alleged transfer was made with actual intent to hinder,

delay, or defraud; has not pleaded any facts showing that Derek and Alden did not provide a reasonably equivalent value in exchange for the transfer; and has failed to specify *any* allegations directly against Derek or Adams, instead repeatedly asserting general and vague allegations against "the sales people (including Defendants)," Ds. Br. 5.

The Receiver responds that the allegations of fraud and fraudulent intent with respect to the transferor Receivership entities and their control persons satisfy the particularity requirements of Rule 9(b), and that the allegations with respect to Derek and Alden's receipt of fraudulent transfers satisfy the requirements of Rule 8(a); that the Receiver's allegations regarding the Breitling fraudulent scheme, and the transfers made to salespersons in furtherance of that fraudulent scheme, comport with the particularity requirements of Rule 9(b); and that the Receiver has simply, concisely, and directly alleged the who, what, when, where, and how of the fraud committed by Faulkner and his confederates through the Receivership entities, including how the Receivership entities paid salespersons like Derek and Alden for recruiting victims into the fraudulent scheme, the amount of the transfers, the timeframe of the transfers, and that the transfers were made with actual intent to hinder, delay, or defraud creditors of the Breitling entities, "*i.e.*, these transfers were made for the purpose of increasing the number of investors (creditors) who were defrauded into purchasing securities," P. Br. 4.

C

The Receiver has not adequately alleged fraudulent intent with respect to the payment of $171,557.72 to Derek and Alden. Although the Receiver alleges that "Faulkner caused

- 7 -

these transfers to be made from the fraudulent scheme alleged herein with actual intent to hinder, delay or defraud creditors of the Breitling entities," Compl. ¶ 47, such generalized allegations are insufficient under Rule 9(b)[5] to plead actual intent with regard to the specific transaction in question.

Section 24.005(b) of TUFTA lists several factors—commonly known as the "badges of fraud"—that may be considered in determining the presence of actual intent. *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008).[6] "Not all, or even a majority of the 'badges of fraud'

---

[5]The Receiver appears to agree that Rule 9(b) provides the proper pleading standard for the intent element of his TUFTA claim. *See* P. Br. 2 (arguing that "[t]he Receiver's allegations of fraud and fraudulent intent with respect to the transferor Receivership entities and their control persons satisfy the particularity requirements of Rule 9(b).").

[6]Section 24.005(b) provides:

> In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

must exist to find actual fraud," but when "several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Id*. at 1067 (citing *Roland v. United States*, 838 F.2d 1400, 1402-03 (5th Cir. 1988)). And while "[p]roof of four to five badges of fraud is sufficient to establish actual fraud," *In re Boyd*, 2012 WL 5199141, at *9 (Bankr. W.D. Tex. Oct. 22, 2012), fewer may be insufficient to establish the existence of fraudulent intent, *see In re Edwards*, 537 B.R. 797, 808 (Bankr. S.D. Tex. 2015).

In this case, the Receiver has failed to explicitly plead *any* badges of fraud and has certainly not done so with the requisite particularity. For this reason, there are insufficient factual allegations to give rise to a reasonable inference of fraud with regard to the Receiver's fraudulent transfer claim. *See Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848, at *13 (N.D. Tex. July 31, 2020) (Fitzwater, J.) (dismissing TUFTA claim where Receiver appointed in this Enforcement Action failed to explicitly plead any badges of fraud with requisite specificity); *see also In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 172 (S.D. Tex. 2016) (holding that plaintiff "failed to state with particularity a claim under TUFTA § 24.005(a)(1)" where plaintiff did not address the badges of fraud); *cf., e.g., Taylor v. Frishberg*, 2012 WL 868718, at *7 (S.D. Tex. Mar. 13, 2012) (finding pleadings sufficient for § 24.005(a)(1) claim where "Receiver's allegations address[ed] several of the factors identified in [§] 24.005(b)."). Because the Receiver has not adequately pleaded "actual intent" with regard to the specific transfer of funds to Derek or Alden, the court dismisses

---

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

- 9 -

the Receiver's fraudulent transfer claim.

IV

The court next considers the Receiver's unjust enrichment claim.

A

Derek and Alden move to dismiss the Receiver's unjust enrichment claim on the ground that unjust enrichment is not an independent cause of action and, in any event, the heightened pleading requirements of Rule 9(b) apply to the unjust enrichment claim and it should be dismissed for the same reasons the TUFTA claim should be dismissed.

The Receiver responds in footnote that the court should deny Derek and Alden's motion with respect to the unjust enrichment claim "upon the same bases it denies the Motion with respect to [the] TUFTA cause of action." P. Br. 2.

B

The court has previously held that Texas law does not recognize an independent cause of action for unjust enrichment. *See Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 560-61 (N.D. Tex. 2009) (Fitzwater, C.J.) (dismissing unjust enrichment claim at summary judgment stage); *see also Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.) (dismissing unjust enrichment claim at motion to dismiss stage and holding that it is not an independent cause of action). "Moreover, Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest." *Hancock*, 635 F.Supp.2d at 560 (citing *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246-47 (Tex.

App. 2007, no pet.); *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 831-32 (Tex. App. 2006, pet. granted), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007); *Mowbray v. Avery*, 76 S.W.3d 663, 680 (Tex. App. 2002, pet. denied)). In *Hancock* this court explained:

> [i]t is true . . . that the Supreme Court of Texas and other courts still occasionally refer to an "unjust enrichment claim." These opinions do not, however, characterize unjust enrichment as a separate cause of action from money had and received; they consider it to be a general theory of recovery for an equitable action seeking restitution. . . . Plaintiffs have cited no cases in which the Supreme Court of Texas has recognized a claim for unjust enrichment as independent from an action for money had and received, and the court concludes Texas law indicates that they are not separate and independent claims.

*Id.* at 560-61 (citations omitted). Because the Receiver neither argues that his unjust enrichment claim can stand as an independent cause of action nor presents the court with authority contrary to its holding in *Hancock*, the court grants Derek and Alden's motion to dismiss the Receiver's unjust enrichment claim.

V

The court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, unless it is clear that the defects are incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal. *See In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable

- 11 -

or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). Because the Receiver has not stated that he cannot, or is unwilling to, cure the defects that the court has identified, the court grants him 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

\* \* \*

For the reasons explained, the court grants Derek and Alden's motion to dismiss but also grants the Receiver leave to file an amended complaint.

**SO ORDERED**.

February 2, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE