IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS L. TAYLOR III, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:20-CV-0393-D |
| VS. | § |
| | § |
| REYMOND TREVINO, et al., | § |
| | § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

In this equity receivership established in connection with a U.S. Securities and Exchange Commission ("SEC") civil enforcement action, the court-appointed temporary receiver ("Receiver") brings this ancillary lawsuit against two defendants—Derek Taylor ("Derek")[1] and Alden Adams, LLC ("Alden")—seeking to recover on claims for avoidance of fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. §§ 24.001-24.013 (West 2018), and for money had and received under Texas common law. The lawsuit is based on these defendants' alleged participation in the fraudulent scheme of Christopher A. Faulkner ("Faulkner"), the key defendant in the SEC enforcement action.[2] Derek and Alden move to dismiss under Fed. R. Civ. P. 12(b)(6)

---

[1]Because the Receiver, Thomas L. Taylor III, and defendant Derek Taylor have the same surname, the court for clarity will refer to Derek Taylor as "Derek." The Receiver and Derek are not related.

[2]*SEC v. Faulkner*, No. 3:16-CV-1735-D (N.D. Tex. filed June 24, 2016) (Fitzwater, J.).

and 9(b).  For the reasons that follow, the court denies the motion.

I

Because this case is the subject of a prior memorandum opinion and order, *Taylor v. Trevino* (*Taylor I*), 2021 WL 347566 (N.D. Tex. Feb. 21, 2021) (Fitzwater, J.), the court will recount only the background facts and procedural history that are pertinent to today's decision.

In June 2016 the SEC filed an enforcement action against Faulkner and others, alleging that Faulkner and his codefendants had orchestrated a massive fraudulent scheme, defrauding investors out of millions of dollars through the offer and sale of oil and gas-related securities.[3]  With court approval, the Receiver [4] filed this ancillary lawsuit against Derek, Alden, and other defendants, alleging claims for avoidance of fraudulent transfers under TUFTA and unjust enrichment under Texas law on behalf of receivership entities Breitling Oil & Gas Corporation, Breitling Royalties Corporation, Crude Energy, LLC, and

---

[3] In deciding defendants' Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to the Receiver, accepts all well-pleaded factual allegations, and draws all reasonable inferences in the Receiver's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[4] The court initially appointed the Receiver for the oil and gas-related assets of Faulkner, Breitling Energy Corporation, and Breitling Oil & Gas Corporation.  The court later expanded the receivership estate to include, *inter alia*, Enforcement Action defendants Crude Energy, LLC and Patriot Energy, Inc. and non-party Breitling Royalties Corporation.

Patriot Energy, Inc. (collectively, "Breitling," unless the context otherwise requires). In *Taylor I* the court granted the motion of Derek and Alden to dismiss under Rules 12(b)(6) and 9(b), but permitted the Receiver to replead. *Taylor I*, 2021 WL 347566, at *4-5. The Receiver then filed the amended complaint.

In the amended complaint, the Receiver alleges, *inter alia*, that between February 24, 2011 and February 8, 2016, Faulkner (through the entities under his control), fraudulently transferred over $833,500[5] to the defendants through a "patently artificial 'bonus' program" Am. Compl. ¶ 32, and did so with actual intent to defraud Breitling's creditors. The Receiver alleges anew his claim for avoidance of fraudulent transfers under TUFTA, and he asserts an alternative claim under Texas law for money had and received. Derek and Alden move to dismiss the amended complaint. The Receiver opposes the motion. The court is deciding the motion on the briefs.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Derek and Alden's motion to dismiss, the Receiver must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[5]The Receiver alleges that Derek and Alden received $171,557.72 in fraudulent transfers.

- 3 -

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 ( N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well

as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724). More colloquially, a plaintiff must plead the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

III

The court begins with the Receiver's TUFTA claim.

A

To establish a claim under § 24.005 of TUFTA, a plaintiff must prove that "(1) [he] is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)). Fraudulent conveyance claims under § 24.005(a)(1) require actual intent and are likely subject to Rule 9(b). *See Clapper v. Am. Realty Invs., Inc.*, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018) (Fitzwater, J.) (explaining that, although an open question in the Fifth Circuit, several members of the Northern District of Texas have applied the enhanced pleading requirements of Rule 9(b) where plaintiffs seek to establish the actual intent of the debtor), *recons. denied*, 2018 WL 6011182 (N.D. Tex. Nov. 16, 2018). To determine actual intent, the court may consider a

non-exclusive list of factors, known as "badges of fraud," set out in § 24.005(b).[6]

B

Derek and Alden move to dismiss the Receiver's TUFTA claim, contending that he has failed in the amended complaint to specify a single transfer made to Derek or Alden with actual intent to hinder, delay, or defraud; has failed to plead any facts showing that Derek and Alden did not provide reasonably equivalent value in exchange for the transfer; and has failed to make any direct allegations against Derek or Alden, instead repeatedly asserting general and vague allegations against "the salespeople (including Defendants)," Ds. Br. 5.

---

[6]Section 24.005(b) provides:

> In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

The Receiver responds that he has sufficiently pleaded on the following grounds that Faulkner and his coconspirators transferred funds to Derek and Alden with the intent to hinder, delay, or defraud the receivership entities and their creditors: he has pleaded the "who, what, when, where, and how" of the fraud committed by Faulkner and his confederates through the receivership entities; he has alleged with particularity the various aspects of Faulkner's fraud with respect to the sales of securities by Derek and Alden; he has detailed five "badges of fraud" listed in TUFTA that are present with respect to the transfers to Derek and Alden[7]; and he has listed, in Exhibit A to the amended complaint, 4 specific transfers made to Alden and 36 specific transfers made to Derek that he alleges were fraudulent.

Derek and Alden reply that the Receiver must do more than allege that "a Defendant was employed by a company where fraud occurred and Defendant received compensation." Ds. Reply 2.

C

The court holds that the Receiver has plausibly alleged that Faulkner, through the entities under his control, transferred $171,557.72 to Derek and Alden with actual intent to

---

[7]Regarding the alleged "badges of fraud," the Receiver contends that he has alleged that the transfers were "concealed"; that Derek and Alden did not provide reasonably equivalent value for the payments they received; that the transaction-based payments to Derek and Alden occurred shortly after substantial debt was incurred (i.e., tort liability vis-à-vis the defrauded investor for, at a minimum, the amount of the investment); that Faulkner misappropriated tens of millions of dollars in investor proceeds over the course of the scheme, constantly decreasing the receivership entities' ability to satisfy their liabilities; and that Breitling had been sued or threatened with suit beginning in April 2010 and continuing through July 2015.

defraud Breitling and its creditors.

"Because the intent to hinder, delay, or defraud creditors is seldom susceptible of direct proof," *In re Alabama & Dunlavy, Ltd.*, 983 F.3d 766, 775 (5th Cir. 2020), "TUFTA supplies a non-exclusive list of eleven factors, commonly known as badges of fraud, that courts may consider in determining whether a debtor actually intended to defraud creditors under [the statute]," *In re Ritz*, 832 F.3d 560, 568 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 437 (5th Cir. 2013)). "Not all, or even a majority, of the 'badges of fraud' must exist to find actual fraud." *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008). But when "several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Id.* (quoting *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988)); *see also In re Ala. & Dunlavy*, 983 F.3d at 775 ("Evidence of a single badge of fraud does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud." (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566-67 (Tex. 2016))).

The Receiver maintains that at least 5 of the 11 badges apply. First, he alleges that the transfers were concealed. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(3). He asserts that defendants, including Derek and Alden, were paid commissions based on a percentage of investors' principal investment amounts when Breitling's offering memoranda stated that no one would receive transaction-based compensation; that Breitling concealed from investors the payment of commissions through the use of a patently artificial "bonus" program; that defendants were not registered with the SEC as brokers or associated with

- 8 -

registered broker-dealers with respect to their offer and sale of securities, and, moreover, defendants' sales practices constituted "general solicitation," thus nullifying Breitling's reliance on the Regulation D exemption to securities registration; and that "[i]n this regard, the transfers to Defendants were concealed from the investors that Defendants were recruiting into the fraudulent scheme," Am. Compl. ¶ 44.

Second, the Receiver alleges that the value of the consideration Breitling received was not reasonably equivalent to the value of the amounts transferred to defendants. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(8). He alleges that defendants were paid as if they were brokers or others associated with registered broker-dealers, but that the work they performed[8] did not require the education, training, licensing, expertise, background checks, or continuing education requirements of brokers. In short, the Receiver alleges that "[d]efendants were compensated excessively vis-à-vis the work they performed, and did not provide reasonably equivalent value for the large commission payments they received." Am. Compl. ¶ 46.

Third, the Receiver maintains that the transfers to defendants occurred shortly before or shortly after Breitling incurred substantial debts. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(10). The amended complaint alleges:

> Faulkner grossly inflated the [Authority for Expenditures] and then included the bloated cost figures in the Offering Memoranda provided to investors by Defendants and other salespeople. Because the price of units in the investments

---

[8]This consisted of cold-calling potential investors and investor intake related to potential investors who contacted Breitling in response to advertising and other general solicitation of the public.

> offered to investors by Defendants and other salespeople were calculated based upon these inflated cost estimates, and because the offering entities were entitled to retain the investor proceeds raised in excess of the actual costs of drilling and completing any wells, each time a Defendant recruited an investor into the fraudulent scheme it created a tort liability vis-à-vis the defrauded investor for, at a minimum, the amount of their investment.

Am. Compl. ¶ 47.

Fourth, the Receiver contends that Breitling was insolvent or became insolvent shortly after the transfers to defendants. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(9). He alleges that Faulkner misappropriated tens of millions of dollars in investor proceeds over the course of the fraudulent scheme; that Breitling was regularly unable to pay its debts as they became due; that, in several instances, Breitling failed to pay its share of expenses for oil and gas well projects, triggering a hold on the receipt of revenue from that well; and that, in other instances, Faulkner caused Breitling to settle claims of fraud by disgruntled investors by agreeing to refund their investments, but that he was not able to make payment of the refunded investment, in breach of the settlement.

Fifth, the Receiver posits that Derek and Alden received the transfers at issue after Breitling had been sued or threatened with suit. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(4). He alleges that a "steady drum beat" of state securities regulatory inquiries and "cease and desist" orders began virtually from day one of the fraudulent scheme; that, beginning in the latter half of 2011, Breitling started receiving a steady stream of investor complaints and threats of litigation; and that "[n]otwithstanding continued complaints and

threats of lawsuits from investors, Breitling continued [its] fraudulent offerings and continued making the transfers of unlawful commissions to Defendants and the sales team, including under the artificial 'bonus' program." Am. Compl. ¶ 50.

These allegations are sufficient at the pleadings stage to enable the court to draw the reasonable inference, based on the presence 5 of the 11 enumerated badges of fraud, that Faulkner transferred the funds at issue to Derek and Alden with actual intent to defraud Breitling and its creditors. *See, e.g., Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F.Supp.3d 899, 917 (N.D. Tex. 2015) (Lindsay, J.) (denying motion to dismiss TUFTA claim where plaintiff alleged that defendant made transfer at issue with actual intent to defraud "and ha[d] adequately alleged several 'badges of fraud,' including: (i) the debtor remained in control of the transferred assets after the transfer; (ii) the transfer was concealed; (iii) before the transfer was made, the debtor had been sued; (iv) the transfer was substantially all of the debtor's assets; and (v) the transfer occurred shortly before a substantial debt was incurred." (citation omitted)).

D

1

Derek and Alden also contend, however, that the Receiver has failed to specify a single transfer made to them, let alone pleaded facts showing that each alleged transfer was made with actual intent to defraud. The court disagrees. Although to satisfy federal pleading standards the Receiver "need not identify the specific transfers," *Janvey v. Alguire*, 846 F.Supp.3d 662, 673 n.8 (N.D. Tex. 2011) (Godbey, J.), the Receiver has clearly identified

here, by account name, date, amount, and transferee, the 4 transfers to Alden and 36 transfers to Derek that he maintains are fraudulent. *See* Am. Compl. Ex. A.[9] And the court has already concluded that the Receiver adequately pleaded the existence of at least five badges of fraud with respect to each of the alleged fraudulent transfers, thus satisfying his burden with respect to pleading a plausible TUFTA claim.

2

Derek and Alden next challenge the second alleged badge of fraud—i.e., whether the value of the consideration Breitling received was reasonably equivalent to the value of the amounts transferred to defendants. They maintain that the Receiver "has not pled any facts showing that [Derek] and [Alden] did not provide 'a reasonably equivalent value in exchange for the transfer.' Indeed, Plaintiff has failed to allege a single specific action against [Derek] or [Alden]." Ds. Br. 5. The court disagrees.

As set out above, the Receiver alleges that defendants were compensated as if they were registered brokers or others associated with registered broker-dealers when, in reality, they lacked the education, training, licensing, expertise, background checks, or continuing education requirements of brokers, and the value they provided to Breitling was not reasonably equivalent to the value of the amounts transferred to them. The allegations of the amended complaint are sufficient to enable the court to draw the reasonable inference—and

---

[9]Because this document is attached as an exhibit to the amended complaint, the court can consider it in deciding the motion to dismiss. *See Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.

thus to plead a plausible claim—that Derek and Alden failed to provide reasonably equivalent value in exchange for the transfer. Moreover, even if the court assumes *arguendo* that the allegations of the amended complaint are insufficient with respect to the second alleged badge of fraud, Derek and Alden do not specifically challenge the sufficiency of the amended complaint with respect to the other four badges of fraud. This is significant because "[p]roof of *four to five badges of fraud* is sufficient to establish actual fraud." *Taylor I*, 2021 WL 347566, at *3 (emphasis added) (quoting *In re Boyd*, 2012 WL 5199141, at *9 (Bankr. W.D. Tex. Oct. 22, 2012)).

3

Derek and Alden also criticize what they characterize as the Receiver's "shotgun approach" of generally alleging violations against all the defendants, and they posit that the Receiver has failed to specify any allegations directly against either of them. The court declines to dismiss the TUFTA claim on this basis.

As this court has noted at least once before, "[e]xcept, for example, where a statute otherwise requires, plaintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act." *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) (Fitzwater, J.). Here, the amended complaint alleges that Taylor was a sales representative who was paid a regular salary as well as transaction-based compensation based on the sale of Breitling securities, and the amended complaint identifies the specific amount that Derek and Alden received in allegedly fraudulent transfers. *See* Am. Compl. ¶ 42 (alleging that "Defendants,"

which includes Derek, "worked on the Breitling sales team recruiting victims into Faulkner's fraudulent scheme," and identifying transfers totaling $171,557.72 to Derek and Alden). When these allegations are viewed in the context of the amended complaint as a whole, they are sufficiently specific to allege a plausible TUFTA claim against Derek and Alden.

Accordingly, the court denies the motion to dismiss the Receiver's TUFTA claim against Derek and Alden.

IV

The court next considers the Receiver's alternative claim under Texas law for money had and received.

A

"Money had and received is an equitable doctrine applied to prevent unjust enrichment." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 662 (Tex. App. 1996, no pet.)). "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to [the plaintiff]." *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App. 2012, no pet.).

> [A] cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

*Bank of Saipan*, 380 F.3d at 840 (quoting *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951)). "A cause of action for money had and received is not based on wrongdoing but

- 14 -

instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App. 2006, pet. denied) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997, no writ)); see also *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App. 2005, no pet.).

B

Derek and Alden move to dismiss this claim as time-barred. They maintain that the limitations period began to run on the date they were last paid, i.e., July 2015, and that the Receiver's claim for money had and received—filed more than four years later[10]—is barred by the statute of limitations.

Limitations is an affirmative defense. *See* Rule 8(c)(1). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)). In other words, Derek and Alden are not entitled to dismissal under Rule 12(b)(6) of the Receiver's claim for money had and received

---

[10]Derek and Alden cite *Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 342 (Tex. App. 1999, no pet.), for the proposition that a two-year statute of limitations apples to a claim for money had and received, and to *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 828-33 (Tex. App. 2006, pet granted), *rev'd on other grounds* 240 S.W.3d 869 (Tex. 2007), for the premise that a four-year statute of limitations applies. Because the court concludes that Derek and Alden are not entitled to a dismissal under Rule 12(b)(6) based on the affirmative defense of limitations, it does not resolve whether a claim for money had and received is subject to a two- or four-year statute of limitations.

unless the Receiver has "pleaded [him]self out of court by admitting to all of the elements of the defense." *Id.* (alteration in original) (quoting *Sivertson*, 2011 WL 4100958, at *3).

In his response to the motion to dismiss, the Receiver contends, *inter alia*, that his claim is not subject to dismissal because he has pleaded the "discovery" rule. Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury. *See TIG Ins. Co. v. Aon Re, Inc*., 521 F.3d 351, 357 (5th Cir. 2008). It provides that the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff." *Weaver v. Witt*, 561 S.W.2d 792, 793-94 (Tex. 1977). The discovery rule tolls the statute of limitations only if the injury is both inherently undiscoverable and objectively verifiable. *K3C Inc. v. Bank of Am. ., N.A.*, 204 Fed. Appx. 455, 462 (5th Cir. 2006) (per curiam) (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). An injury is inherently undiscoverable if it is of a type not generally discoverable by the exercise of reasonable diligence. *See HECI Expl.*, 982 S.W.2d at 886.

In the amended complaint, the Receiver alleges that he

> was only able to discover that the Defendants hold, and were unjustly enriched by, funds which in equity and good conscience belong to BOG, BRC, Crude Energy, and Patriot after Faulkner was removed from control of the Breitling entities and after a time-consuming and extensive review of thousands of pages of paper and electronic records and documents relating to the Breitling entities.

Am. Compl. ¶ 65. Viewing the amended complaint favorably to the Receiver, the court is unable to conclude that the discovery rule does *not* apply in this case. And because it is

- 16 -

possible that the discovery rule *does* apply, the court can only conclude that the Receiver has not effectively pleaded himself out of court by admitting to all of the elements of the limitations defense.

Accordingly, the court denies Derek and Alden's motion to dismiss the Receiver's claim for money had and received to the extent the motion is based on the affirmative defense of limitations.

C

Derek and Alden also move to dismiss the Receiver's claim for money had and received on the ground that "[t]here is no allegation that Defendants received the monies at issue in any way other than as employees, in due course of business, in good faith, and for valuable consideration." Ds. Br. 6. The court disagrees, concluding that this argument is flawed in at least three respects.

First, the Receiver *does* allege that Derek and Alden failed to provide valuable consideration in exchange for the transfers at issue. *See, e.g.,* Am. Compl. ¶ 46 ("Defendants were compensated excessively vis-à-vis the work they performed, and did not provide reasonably equivalent value for the large commission payments they received.").

Second, the absence of good faith is not an element that the Receiver must plead to state a plausible claim for money had and received. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) ("A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to

- 17 -

another.'" (citation omitted)); *Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 917 (Tex. App. 2017, pet. denied) (holding that to prevail on a claim for money had and received, "a plaintiff need only prove that (1) the defendant holds money, and (2) the money in equity and good conscience belongs to the plaintiff.").

Third, to the extent Derek and Alden intend to defeat the Receiver's claim on the basis that they acted in good faith, doing nothing "other than show up to work and get paid," Ds. Reply 2, this argument is in the nature of an affirmative defense to the Receiver's claim. *See, e.g., GE Cap. Com., Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954, at *5 (N.D. Tex. Dec. 31, 2009) (Lindsay, J.) (denying motion to dismiss claim for money had and received on the ground that plaintiffs failed to specifically allege "bad faith" in their complaint because "good faith is not a necessary element of the claim . . . but rather goes to the issue of affirmative defense" and plaintiffs had not alleged facts that would conclusively establish this affirmative defense). Derek and Alden have failed, as they must, to demonstrate that the Receiver has "pleaded [him]self out of court by admitting to all of the elements of the defense." *Cochran*, 2011 WL 5604024, at *1 (alteration in original) (quoting *Sivertson*, 2011 WL 4100958, at *3).

The court therefore denies the motion to dismiss the Receiver's claim for money had and received.[11]

---

[11]Derek and Alden do not argue any other grounds for dismissing the Receiver's claim for money had and received.

- 18 -

\* \* \*

Accordingly, for the reasons explained, the court denies the Rule 12(b)(6) motion of Derek and Alden to dismiss the Receiver's claim under TUFTA and alternative claim for money had and received.

**SO ORDERED**.

October 15, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE