IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THOMAS L. TAYLOR III,                   §
                                        §
                  Plaintiff,            §
                                        §   Civil Action No. 3:20-CV-0393-D
VS.                                     §
                                        §
REYMOND TREVINO, et al.,                §
                                        §
                  Defendants.           §

MEMORANDUM OPINION
AND ORDER

In this equity receivership established in connection with a U.S. Securities and
Exchange Commission ("SEC") civil enforcement action ("Enforcement Action"), the court-
appointed temporary receiver brings this ancillary lawsuit against several defendants—
including Reymundo Trevino, III ("Trevino"), Eagle Rio Energy Companies, Inc. ("Eagle
Rio"), and Okoto Okpo ("Okpo")—seeking to recover on claims for avoidance of fraudulent
transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com.
Code Ann. §§ 24.001-24.013 (West 2018), and for money had and received under Texas
common law. The lawsuit is based on defendants' alleged participation in the fraudulent
scheme of Christopher A. Faulkner ("Faulkner"), the key defendant in the Enforcement
Action.[1]   Three of the defendants—Trevino, Eagle Rio, and Okpo (collectively,
"defendants") now move for summary judgment dismissing the Receiver's claims and for an

---

[1]*SEC v. Faulkner*, No. 3:16-CV-1735-D (N.D. Tex. filed June 24, 2016) (Fitzwater,
J.).

award of attorney's fees under TUFTA.  For the reasons that follow, the court grants the motion in part as to the Receiver's TUFTA claim, and it otherwise denies the motion.

I

On June 24, 2016 the SEC filed the Enforcement Action against Faulkner, Breitling Energy Corporation ("BECC"), Breitling Oil & Gas Corporation ("BOG"), Crude Energy, LLC ("Crude"), Patriot Energy, Inc. ("Patriot"), and several individuals.  The SEC alleges that Faulkner and his codefendants orchestrated a massive fraudulent scheme, defrauding investors of millions of dollars through the offer and sale of oil and gas-related securities.[2]

On August 14, 2017 the court entered an order in the Enforcement Action ("Receivership Order") appointing Thomas L. Taylor III as temporary receiver ("Receiver") for the assets of Faulkner, BOG, and BECC.  Relevant to the instant ancillary action, the Receivership Order states, in pertinent part:

> All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

Receivership Order at ¶ 22.

---

[2]Faulkner has since been convicted and sentenced for federal crimes, including securities fraud. *See United States v. Faulkner*, No. 3:18-CR-500-B (N.D. Tex. Sept. 29, 2021) (Boyle, J.) (criminal judgment).

On September 12, 2018 the court amended the Receivership Order to include, *inter alia*, the assets of Patriot, a defendant in the Enforcement Action.  And on March 26, 2019 the court again amended the Receivership Order to include, *inter alia*, Crude (a defendant in the Enforcement Action) and Breitling Royalties Corporation ("BRC") (a non-party).

In this ancillary lawsuit, the Receiver sues Trevino, Eagle Rio, Okpo, Derek Taylor ("Taylor"), Alden Adams LLC ("Alden"), and Nathan Madu ("Madu")[3] on behalf of receivership entities BOG, BRC, Crude, and Patriot (collectively, the "Receivership Entities").  In his first amended complaint ("amended complaint"),[4] the Receiver alleges claims for avoidance of fraudulent transfers under TUFTA and for money had and received under Texas common law, seeking to recover over $833,500 in salary and commissions that the Receivership Entities allegedly paid defendants.

The Receivership Entities hired defendant Trevino in July 2011.[5]  During Trevino's employment, he worked as a salesman, cold-calling potential investors and asking whether

---

[3]On August 25, 2021 the court entered a final judgment in the Receiver's favor against Madu.

[4]The court on February 2, 2021 dismissed the Receiver's TUFTA and unjust enrichment claims against Taylor and Alden but permitted the Receiver to replead.  After the Receiver filed his amended complaint, Taylor and Alden moved anew to dismiss. On October 15, 2021 the court denied their motion and declined to dismiss the Receiver's claim under TUFTA and alternative claim for money had and received.  *See Taylor v. Trevino*, 2021 WL 4822018, at *8 (N.D. Tex. Oct. 15, 2021) (Fitzwater, J.).

[5]In deciding defendants' motion for summary judgment, the court views the evidence in the light most favorable to the Receiver as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

they would be interested in the Receivership Entities' offering materials.  According to defendants, if a person indicated potential interest, Trevino turned over the potential investor's name and contact information to a supervisor to follow up with the prospect. Trevino did not have an ownership interest in any of the Receivership Entities, but was instead paid a fixed, biweekly salary plus a 5% commission on any amounts invested by prospects whom he had contacted.  Between July 22, 2011 and June 2, 2014, the Receivership Entities paid $237,868.50 to Trevino and Eagle Rio,[6] a Texas corporation that Trevino formed for his own business and tax reasons.

The Receivership Entities hired defendant Okpo in December 2012.  Like Trevino, Okpo worked as a salesman, marketing the Receivership Entities' securities by cold-calling potential investors and referring any potentially interested persons to his supervisor.  Okpo was also paid a fixed, biweekly salary plus a 5% commission on any amounts invested by prospects whom he contacted.  Between January 2, 2013 and February 8, 2016, the Receivership Entities paid Okpo a total of $204,158.25.  From February 18, 2016 to March 31, 2016, the Receivership Entities paid Okpo a total of $10,200.  Between August 10, 2015 and February 8, 2016, Okpo received a total of $33,415.00 in compensation from the Receivership Entities.  During the period from April 21, 2015 through February 8, 2016, Okpo's compensation was paid by an entity called Simple Solutions, Inc.[7]

---

[6]The last payment the Receivership Entities made to Eagle Rio was on April 22, 2014.

[7]The Receiver alleges in the amended complaint that "certain funds transferred on behalf of Crude and Patriot were transferred from Simple Solutions, Inc. bank accounts."

On February 7, 2018 the Receiver sent a demand letter to Trevino and Eagle Rio, stating that Eagle Rio and Trevino had received fraudulent transfers in the combined amount of $237,868.50 and demanding that the funds be returned.  The Receiver sent a substantially similar demand letter to Okpo, also dated February 7, 2018, demanding that fraudulent transfers in the amount of $204,158.25 be returned.  On February 18, 2020, after obtaining court approval, the Receiver filed the instant lawsuit.

Trevino, Eagle Rio, and Okpo now jointly move for summary judgment.[8]  They maintain that the Receiver's TUFTA claim is barred under the statute of repose set out in Tex. Bus. & Com. Code Ann. § 24.010(a)(1) and that they are entitled to summary judgment on the Receiver's claim for money had and received based on several affirmative defenses. The Receiver opposes the motion.  The court is deciding the motion on the briefs, without oral argument.

## II

When parties move for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving parties can meet their summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the

---

Am. Compl. at ¶ 11 n.2.

[8]Trevino, Eagle Rio, and Okpo initially moved for summary judgment on November 23, 2020.  After the Receiver amended his complaint, however, defendants amended their summary judgment motion to address the claim for money had and received alleged in the amended complaint.

moving parties do so, the nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

For claims or defenses on which the moving parties will bear the burden of proof at trial, to be entitled to summary judgment the movants "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movants must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court begins with defendants' contention that the Receiver's fraudulent conveyance claim is extinguished under the TUFTA statute of repose.

A

TUFTA provides, in pertinent part:

> [e]xcept as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]

Tex. Bus. & Com. Code Ann. § 24.010(a)(1).[9]  Section 24.010 of TUFTA "is a statute of repose, rather than a statute of limitations." *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013).  Unlike a statute of limitations, a statute of repose not only "procedurally bar[s] an untimely claim, it substantively 'extinguishes' the cause of action." *Id*.  "A statute of repose provides an absolute affirmative defense, and the defendant bears the burden of proving all factual requisites to the statute's application." *Salgado v. Great Dane Trailers*, 2012 WL 401484, at *3 (S.D. Tex. Feb. 6, 2012) (citing *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (holding that defendant bore burden on statute of repose defense at summary judgment)); *see also Hagan v. Mazda Motor Co. of Am., Inc*., 690 Fed.

_____

[9]Section 24.010(b) and (c) of TUFTA are inapposite.  Section 24.010(b) applies to a claim brought "on behalf of a spouse, minor, or ward with respect to a fraudulent transfer or obligation," and § 24.010(c) controls when "a creditor entitled to bring an action under this chapter is under a legal disability when a time period prescribed by this section starts."

Appx. 242, 243 (5th Cir. 2017) (per curiam) (holding that, "[u]nder Texas law, a defendant moving for summary judgment on an affirmative defense must irrefutably establish its elements.").

But TUFTA's statute of repose is similar in one respect to a statute of limitations: § 24.010(a)(1) incorporates a "discovery rule" under which a "fraudulent-transfer claim must be filed within one year after the fraudulent nature of the transfer is discovered or reasonably could have been discovered." *Janvey v. Democratic Senatorial Campaign Comm., Inc*. (*DSCC*), 712 F.3d 185, 195 (5th Cir. 2013).[10] "[T]he [Texas] legislature, through the enactment of TUFTA's statute of repose provision, has already determined a type of discovery rule applies to TUFTA claims," that is, "the discovery rule is explicitly available by statute[.]" *Janvey v. Romero*, 817 F.3d 184, 189 n.4 (5th Cir. 2016) (citations omitted). Thus even when the four-year statute of repose would otherwise have elapsed, § 24.010(a)(1) enables a plaintiff to bring a fraudulent conveyance claim under § 24.005(a)(1) of TUFTA, provided the fraudulent nature of the transfer was not reasonably discoverable and the claim is brought within one year after the fraudulent nature of the transfer was discovered or reasonably could have been discovered.

---

[10]Section 24.010(b)(1) also incorporates a "discovery rule," but it does not apply here. *See supra* note 9. The court will therefore discuss § 24.010(a)(1) as if it contained the exclusive discovery-rule provision of TUFTA.

B

Defendants maintain that the Receiver's TUFTA claim was extinguished by the statute of repose before the Receiver filed this lawsuit. They contend that it is undisputed that all of the transfers listed in Exhibit A to the amended complaint ("Exhibit A") occurred more than four years before the Receiver filed his complaint on February 18, 2020; that it is undisputed that the Receiver "discovered" these transfers and expressly stated that they were fraudulent under TUFTA § 24.005(a)(1) more than two years before he filed the complaint; and that the Receiver's fraudulent transfer claims under TUFTA were therefore extinguished by operation of law before the complaint was filed and, as a matter of law, they no longer exist. To the extent the Receiver relies on the tolling provision of the court's Receivership Order (and subsequent amended orders) to escape the effect of the TUFTA statute of repose, defendants contend that this provision does not apply because federal tolling principles cannot preempt the TUFTA statute of repose. Defendants maintain that this court has no equitable authority to ignore or defeat the provisions of TUFTA when applying that statute; the Supreme Court of Texas has specifically and unambiguously held that § 24.010 is a statute of repose, not a statute of limitations; § 24.010 does not *procedurally* bar an untimely claim but, instead, *substantively* extinguishes the cause of action; and because the time limits in § 24.010(a) are elements of a Texas statutory cause of action, this court has no "equitable" power to change these limits.

The Receiver responds that the court's injunction regarding ancillary actions applies to the Receiver's claims under TUFTA; this court exercised the "inherent power of a court

of equity," P. Br. at 5, to enjoin ancillary actions, including with respect to the Receiver's TUFTA cause of action, and to toll the accrual of such causes of action in favor of the Receivership Entities, so long as that injunction was in effect; and the Receiver's TUFTA causes of action therefore did not accrue, or become extinguished, as ordered by this court.

Defendants reply that, to the extent the Receiver "argues that the Court has broad equitable powers to overrule the Texas Supreme Court regarding the interpretation of TUFTA Section 24.010(a) and to toll the statutory repose period," the Receiver has failed to provide the court authority for this position, Ds. Reply at 7; although federal courts have broad discretion when fashioning remedies for an equity receivership, they do not have "broad powers" or "wide discretion" to overrule the Supreme Court of Texas regarding its interpretation of TUFTA or to change the elements of a Texas statutory cause of action; the Supreme Court of Texas is the final authority on the interpretation of TUFTA; the Supreme Court of Texas has unequivocally confirmed that § 24.010(a)(1) is a statute of repose and not a statute of limitations; the Supreme Court of the United States has at least twice held that statutes of repose are not subject to equitable tolling; the time limitations in § 24.010(a) are enforceable as written, and this court has no equitable power to override them; and the Receiver's TUFTA claims against defendants were therefore extinguished as a matter of law before the Receiver filed this lawsuit.

## C

It is undisputed that all of the transfers to Trevino, Eagle Rio, and Okpo listed in Exhibit A occurred more than four years before the Receiver filed this lawsuit. It is also

undisputed that, as of February 7, 2018, the Receiver knew of the transfers listed in Exhibit A and had already declared them to be fraudulent under TUFTA. Because the Receiver filed this lawsuit more than four years after the last transfer listed in Exhibit A and more than two years after he discovered the transfers (and their fraudulent nature), the court holds that the Receiver's TUFTA cause of action—to the extent based on the transfers listed in Exhibit A—was extinguished by the statute of repose in § 24.010(a)(1).

The Receiver argues that the court has broad equitable powers to toll the accrual of causes of action in favor of the Receivership Entities and that, in fact, the court did toll the accrual of the Receiver's TUFTA cause of action in the Receivership Order. The court disagrees. Although in the Receivership Order the court may have tolled the statute of limitations with respect to certain of the Receiver's other causes of action (in the Enforcement Action as well as in this and any other ancillary actions), the court lacked the power to equitably toll TUFTA's statute of repose. As the Supreme Court of the United States has clearly explained:

> [t]he purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts. By establishing a fixed limit, a statute of repose implements a "'legislative decisio[n] that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'" [*CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014)]. The unqualified nature of that determination supersedes the courts' residual authority and forecloses the extension of the statutory period based on equitable principles. For this reason, the Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling.

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, ___ U.S. ___, 137 S.Ct. 2042, 2051 (2017) (some alterations in original; some citations omitted). The Receiver does not argue that § 24.010(a)(1) is *not* a statute of repose. Nor does he provide any authority for the proposition that a federal court can toll a statute of repose created by state law through the use of its "broad powers and wide discretion to determine the appropriate relief in a equity receivership." P. Br. at 5 (citation omitted). As explained above, it is clearly established that "statutes of repose are not subject to equitable tolling." *ANZ Sec., Inc.*, 137 S.Ct. at 2051. Accordingly, the Receivership Order could not have tolled the TUFTA statute of repose.

Because the Receiver does not oppose on any other ground defendants' motion for summary judgment with respect to the TUFTA claim based on the transfers listed in Exhibit A, the court grants summary judgment in this respect. Defendants have established beyond peradventure that, to the extent the Receiver's TUFTA claim is based on the transfers listed in Exhibit A, § 24.010(a)(1) extinguished this claim on or before February 7, 2019 with respect to the transfers to Trevino and Eagle River, and on or before February 8, 2020 with respect to the transfers to Okpo.[11]

---

[11]The most recent payment to Trevino listed on Exhibit A occurred on June 2, 2014. The most recent payment to Eagle Rio occurred on April 22, 2014. Without the "discovery" rule, all claims based on transfers to Trevino would have been extinguished under § 24.010(a)(1) on June 2, 2018, at the latest, and all claims based on transfers to Eagle Rio would have been extinguished under § 24.010(a)(1) on April 22, 2018 at the latest. Assuming the one-year "discovery" rule applies, all claims based on transfers to Trevino or Eagle Rio would have been extinguished under § 24.010(a)(1) on February 7, 2019 (one year after the Receiver sent his demand letter to Trevino and Eagle Rio), at the latest. Regarding Okpo, the most recent payment listed on Exhibit A occurred on February 8, 2016. Any claim based on the transfers to Okpo listed in Exhibit A would thus have been extinguished under

IV

To the extent the Receiver seeks to recover transfers to Okpo that occurred *after* February 8, 2016, the Receiver has not pleaded a TUFTA claim based on these transfers. Nor is he permitted to amend his complaint a second time to plead such a claim.

A

The Receivership Entities allegedly transferred to Okpo $10,200 in salary and bonus payments between February 18, 2016 and March 31, 2016. Defendants move for summary judgment on the Receiver's TUFTA claim to the extent it is based on these payments, contending that, because the Receiver did not include them in the amended complaint or in Exhibit A, the statute of repose extinguished any claim based on them on March 31, 2020, at the latest[12]; the Receiver's deadline for amending the complaint to add these transfers was December 1, 2020 under the court's September 9, 2020 scheduling order; and because the statute of repose has now extinguished any TUFTA claim based on these payments, amendment of the complaint at this point would be futile.

The Receiver responds that, although the complaint references February 8, 2016, and although the final transfer to Okpo listed on Exhibit A occurred on February 8, 2016, it is clear from the face of the Receiver's pleadings that he sought to recover *all* transfers to Okpo

_____

§ 24.010(a)(1) on February 8, 2020, at the latest. The discovery rule would not extend this date with respect to Okpo because it is undisputed that the Receiver knew about the transfers to Okpo on February 7, 2018, at the latest.

[12]It is undisputed that, at the time the Receiver filed the complaint in this action, TUFTA's four-year statute of repose had not yet expired with respect to these transfers.

- 13 -

and not just some subset of those transfers; he is not required to allege all eventual damages in his pleadings; the fact that evidence obtained in litigation establishes additional liability does not foreclose the Receiver's right to recover those amounts; and these additional transfers were of the same nature as all of the other transfers received by Okpo and alleged in the complaint and amended complaint, and because they fall within a plain reading of the language of the Receiver's pleadings, they should not be excluded. Alternatively, the Receiver asks the court to grant him leave to amend his complaint under Fed. R. Civ. P. 15(a)(2) to allege these additional transfers. In support of his motion to amend, the Receiver contends that Okpo made numerous false assertions regarding these transfers in his pleadings, representing in his amended answer and answer to the Receiver's amended complaint that he received no transfers after February 8, 2016. He also posits that the amendment would "relate back" to the date of the Receiver's complaint and therefore would not be "futile" because the Receiver's complaint placed Okpo on notice that the Receiver sought to recover *all* transfers made to him by the Receivership Entities, and the transfers made after February 8, 2016 were made for the same purpose and under the same circumstances as the transfers alleged to have been made through February 8, 2016 (i.e., compensation for Okpo's recruitment of victims into Faulkner's fraudulent scheme).

Defendants reply that there is no excuse for the Receiver's failure to include the last $10,200 received by Okpo in his amended complaint and that the argument that those transfers would "relate back" to his other, extinguished TUFTA claims fails for the following reasons: the Receiver's argument would require equitable tolling of the statute of repose,

- 14 -

which is clearly prohibited under *ANZ Securities, Inc.*; the Receiver's assertion that he was deceived by defendants' pleadings is "patently false," Ds. Reply at 10-11, because defendants' May 7, 2020 answer specifically disclosed the $10,200 received by Okpo, and "[w]hile the Receiver should have 'discovered' the last $10,200 received by Okpo during his examination of the books and records of the Receivership Entities, Defendants' original Answer specifically notified the Receiver of those payments," *id*. at 12; defendants included in their Rule 26(a) initial disclosures, served on September 24, 2020, copies of Okpo's bank statements that reflected the $10,200 that Okpo received during the period from February 18, 2016 to March 31, 2016, and the Receiver has no excuse for his failure to include the last $10,200 in his complaint or even in his amended complaint, which was filed ten months after defendants' answer and five months after defendants served their Rule 26(a) disclosures; under TUFTA, each alleged fraudulent transfer is viewed and analyzed individually, one alleged fraudulent transfer does not "relate" to another, and allowing relation back would defeat the legislative purpose of the statute of repose, which is to create a specific time limit beyond which a defendant should no longer be subjected to protracted liability; and granting leave to amend would be futile because the Receiver's still unpleaded fraudulent transfer claim against Okpo for return of the last $10,200 in compensation received was extinguished by TUFTA's statute of repose and does not relate back to the Receiver's other extinguished TUFTA claims.

B

At the outset, the court must determine whether the Receiver's TUFTA claim, as pleaded in the amended complaint, encompasses the transfers to Okpo that occurred *after* February 8, 2016.

As a general rule, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This rule is rooted in the need to provide adequate notice. "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)). "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Bennett v. Dall. Indep. Sch. Dist.*, 936 F.Supp.2d 767, 781 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012)).

In support of his TUFTA claim, the Receiver alleges that "BOG, BRC, [Crude], and Patriot transferred at least $833,500 to, or for the benefit of, Defendants *between February 24, 2011 and February 8, 2016*." Am. Compl. at ¶ 54 (emphasis added). He attaches as an exhibit to the amended complaint a list of the transfers that he is seeking to avoid, all of which occurred within the specified date range. *See id.* at ¶ 42 ("For their efforts, Defendants received transfers totaling over $833,500 from Breitling entities BOG, BRC,

[Crude], and Patriot between February 24, 2011 and February 8, 2016, as demonstrated by Exhibit A attached hereto and incorporated by reference herein." (bold font omitted)). Contrary to what the Receiver argues in his response, the Receiver does *not* plead that he is seeking to avoid "*all* transfers made to Okpo." P. Br. at 6 (emphasis added).[13]  Nor does he allege or otherwise put defendants on notice that, in addition to the transfers listed in Exhibit A, he is also seeking to recover transfers that occurred *after* February 8, 2016.[14]

Because the amended complaint provides no indication that the Receiver intended to base his TUFTA claim on transfers to Okpo occurring after February 8, 2016, the court concludes that the Receiver has not alleged a TUFTA claim based on these transfers.

C

Having concluded that the Receiver has not pleaded a TUFTA claim based on transfers to Okpo occurring after February 8, 2016, the court now turns to the Receiver's alternative motion to amend the complaint to add this claim.

---

[13]In contrast, in support of his money had and received claim, the Receiver *does* plead that he "is entitled to disgorgement of *all* transferred funds [defendants] received," Am. Compl. at ¶ 64 (emphasis added), without in any way limiting the time frame of the alleged transfers.

[14]To the extent that the Receiver argues that his use of the phrase "at least" indicates that he sought recover all transfers, and not just a subset of those transfers, the court disagrees that this intent is clear from the pleadings.  The exact sum of the amounts the Receiver lists in ¶ 42 of the amended complaint is $833,505.47.  The Receiver's use of the phrase "at least $833,500" in ¶ 67 could therefore be plausibly read to indicate that $833,500 is an estimate, and not the exact sum, of the amount transferred to defendants.

- 17 -

1

When, as here, the deadline to amend pleadings has expired, a court considering a motion to amend or supplement pleadings must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).  If the movant satisfies the requirements of Rule 16(b)(4), the court next determines whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires."  Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend or supplement: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted).  "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc*., 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.).  Mere inadvertence on the part of the movant is insufficient to constitute "good cause." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 248523, at *2 (N.D. Tex. Jan. 26, 2011) (Fitzwater, C.J.).  Instead, the movant must show that, despite his diligence, he could not have reasonably met the scheduling deadline. *See Am. Tourmaline*

*Fields*, 1998 WL 874825, at *1.

2

"When a party files an untimely motion for leave to amend and does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone." *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.). Here, the Receiver has "not only failed to meet the good cause standard required under Rule 16(b)(4) to obtain modification of the scheduling order, [he has] not even addressed that standard or the four-part test under which the court assesses whether to amend the scheduling order." *Id.* Indeed, his motion fails to explain why he waited more than one year after defendants first disclosed the post-February 8, 2016 payments to Okpo[15] to move to amend his pleadings, and even then did so only in response to defendants' amended motion for summary judgment. Nor does he attempt to explain why, despite his diligence, he could not have reasonably met the scheduling deadline. Because the

_____

[15]Although in amended pleadings defendants later denied that Okpo received any transfers after February 8, 2016, *see, e.g.,* Trevino, Eagle Rio, & Okpo Am. Ans. at ¶ 40 ("Okpo denies that he received any transfers after February 8, 2016."); Trevino, Eagle Rio, & Okpo 2d Am. Ans. at ¶ 42 ("Okpo denies that he received any transfers after February 8, 2016."), they also asserted in their May 7, 2020 original answer that "[t]his action is time barred as to all transfers received by Okpo, except for $10,200," and that "[b]etween February 18, 2016 and March 31, 2016, [Okpo] received four (4) regular payments of salary in the amount of $800 each (paid biweekly), totaling $3,200, and three (3) bonus payments $4,000, $1,500, and $1,500 respectively, totaling $7000." Trevino, Eagle Rio, & Okpo Ans. at 2. The Receiver maintains that "[j]ustice . . . requires granting leave to amend because Okpo made numerous false assertions regarding these transfers in his pleadings," P. Br. at 7, but he does not dispute that he actually knew about the February 18, 2016 to March 31, 2016 transfers by May 7, 2020, at the latest.

Receiver "file[d] an untimely motion for leave to amend and d[id] not address the good cause standard under Rule 16(b)(4)," the court "denies the motion for that reason alone." *Schlegel*, 2010 WL 2671316, at *3; *see also Maiden Biosciences, Inc. v. MPM Med., Inc.*, 2019 WL 6036941, at *6 (N.D. Tex. Nov. 14, 2019) (Fitzwater, J.) (denying leave to amend where movant "fail[ed] to mention . . . Rule 16(b)(4) or good cause[.]").

## D

In the alternative, assuming *arguendo* that the Receiver could satisfy the requirements of Rule 16(b)(4), the court nevertheless denies the motion to amend under Rule 15(a)(1) because the Receiver's proposed amendment would be futile.

## 1

Rule 15(a)(2) provides that a district "court should freely give leave [to amend] when justice so requires." But "leave to amend need not be granted when it would be futile to do so." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir. 1980)). "Such a situation arises when leave is sought to add a claim upon which the statute of limitations has run." *Id.*; *see also Whitt v. Stephens Cnty.*, 529 F.3d 278, 283 (5th Cir. 2008) ("because Whitt's claims against the named defendants are time-barred, it would have been futile for Whitt to amend, so the district court appropriately denied the motion to amend."). Defendants contend that an amendment would be futile because the Receiver's claim against Okpo for return of the last $10,200 in compensation received was extinguished on March 31, 2020 by the statute of repose in TUFTA § 24.010(a)(1) and does not "relate back" to the Receiver's other extinguished

TUFTA claims.

2

Whether an amended pleading in federal court relates back to a prior pleading is a procedural question that invokes Rule 15(c).  *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987) ("Rule 15(c) is a truly procedural rule because it governs the in-court dispute resolution processes rather than the dispute that brought the parties into court.").  Rule 15(c)(1)(A) provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back."  Accordingly, this court must look to Texas law, which provides the statute of limitations for the Receiver's TUFTA claim, when determining whether new allegations relate back to a former pleading.  Under Texas law,

> [i]f a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 2015).  The Fifth Circuit has construed Rule 15(c)(1)(A) to mean that the court should consider *both* Rule 15(c) and Tex. Civ. Prac. & Rem. Code Ann. § 16.068, and whichever is more forgiving and works to save the claim is the one that controls.  *See Schirle v. Sokudo USA, L.L.C.*, 484 Fed. Appx. 893, 901-02 (5th Cir. 2012) (per curiam) ("The consequence of Rule 15(c)(1)(A) is that a claim will be deemed to 'relate back' if relation back is permitted under state law, even if it is not

- 21 -

permitted under federal law." (citation omitted)).

The relation back analysis is complicated in this case by § 24.010(a) of TUFTA, which provides that a fraudulent transfer claim is *extinguished* if not timely brought. As explained above, the Supreme Court of Texas has unambiguously held that § 24.010(a)(1) is a statute of repose, not a statute of limitations. *See Nathan*, 408 S.W.3d at 874. As such, § 24.010 "create[s] a substantive right." *Galbraith Eng'g Consutants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009) ("[W]hile statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time."). Rule 15(c)'s relation back rule, on the other hand, is "truly procedural." *Johansen*, 810 F.2d at 1380. Because the Federal Rules of Civil Procedure may not "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), the Receiver cannot rely on Rule 15(c)—a *procedural* rule—to revive a claim that has been extinguished by operation of TUFTA's statute of repose. *See, e.g., In re Am. Hous. Found.*, 543 B.R. 245, 258 (Bankr. N.D. Tex. 2015) ("Relation back is not allowed here: TUFTA's § 24.010 is a statute of repose and is immune to procedural tolling." (citing cases)); *see also Aguilar v. Trujillo*, 162 S.W.3d 839, 853 (Tex. App. 2005, pet. denied) ("A claim extinguished by operation of a statute of repose does not 'relate back' to the filing of an earlier pleading as it would in the case of a statute of limitation.").

Although at the time the Receiver filed the complaint on February 18, 2020 TUFTA's four-year statute of repose had not yet expired with respect to the transfers to Okpo occurring between February 18, 2016 and March 31, 2016, TUFTA's statute of repose operated to

extinguish any TUFTA claim based on those transfers on May 7, 2021, at the latest.[16]  The Receiver cannot rely on the federal or state "relation back" rule to revive a claim that was extinguished by a statute of repose.  Accordingly, for this alternative reason, the court denies the Receiver's motion to amend.

V

In sum, the court grants in part defendants' motion for summary judgment addressed to the Receiver's TUFTA claim.

The court holds that defendants have established beyond peradventure that, to the extent the Receiver's TUFTA claim is based on the transfers listed in Exhibit A, § 24.010(a)(1) extinguished these claims on or before February 7, 2019 with respect to the transfers to Trevino and Eagle River and on or before February 8, 2020 with respect to the transfers to Okpo.  The court also holds that the Receiver has not pleaded a TUFTA claim based on transfers to Okpo that occurred after February 8, 2016; the Receiver is not permitted to amend his complaint at this time to plead such a claim; and, in the alternative, assuming *arguendo* that the Receiver could satisfy the other requirements for amending this complaint, the court would nevertheless deny the Receiver's motion to amend because the proposed amendment would be futile.

_____

[16]Four years from the last alleged transfer would have been March 31, 2020. Assuming *arguendo* that the Receiver did not know about the post-February 8, 2016 transfers until defendants filed their original answer on May 7, 2020, the "discovery rule" in § 24.010(a)(1) would have extended the statute of repose one year from that date, or until May 7, 2021.  The Receiver first requested leave to amend his complaint on July 30, 2021, in his response to defendants' amended motion for summary judgment.

VI

The court now turns to defendants' motion for summary judgment with respect to the Receiver's claim for money had and received.

A

A claim for "money had and received" is equitable in nature. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015). "Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." *Id.* (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App. 2012, no pet.)). This cause of action is not based on any misconduct but instead looks only to whether one received money that rightfully belonged to another. *Id.* The cause of action for money had and received is applied to keep the defendant from being unjustly enriched. *Id.* To prove such a claim, a plaintiff must establish that the defendant holds money that in good conscience and equity belongs to the plaintiff. *Id.*; *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997, no writ); *see also Burrus v. Reyes*, 516 S.W.3d 170, 197 (Tex. App. 2017, pet. denied) (stating that money had and received cause of action is aimed at abstract justice rather than restricted by technical rules and formalities). A "defendant may present any facts and raise any defenses that would deny the claimant's right or show that in equity and good conscience the claimant should not recover." *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007).

B

Defendants move for summary judgment on the ground that the availability of a fully adequate legal remedy bars the Receiver's equitable claim for money had and received.

1

Defendants contend that the Receiver's money had and received claim is actually just a TUFTA fraudulent transfer claim under a different name; the Receiver alleges no new or different facts to support his money had and received claim; to the extent Texas ever had a common law or equitable cause of action for recovery of fraudulent transfers, TUFTA replaced and preempted that cause of action for any transfers that occurred after September 1, 1987; all rights, remedies, and defenses regarding the recovery of the fraudulent transfers under Texas law reside within the text of the statute; the Receiver had colorable fraudulent transfer claims on which he might have recovered, subject to proof of the elements and defendants' affirmative defenses of good faith and reasonably equivalent value, but negligently let his TUFTA claims expire before he filed his complaint; the Receiver cannot resurrect expired statutory claims merely by renaming them as something else because that result would undermine the statutory purpose of TUFTA; and money had and received is an equitable theory that is sometimes available to fill the gaps when no adequate legal remedy is available, but in this case, the Receiver had an adequate legal remedy under TUFTA and "just waited too long to sue," Ds. Br. at 29.

The Receiver responds that, to the extent defendants contend they acted in good faith and exchanged reasonably equivalent value for the transfers they received, the Receiver does

not have an adequate legal remedy under TUFTA that would preclude count II; the Receiver is permitted to assert his equitable claims in the alternative to his TUFTA claim and can seek recovery of the same funds transferred to defendants under two separate theories; TUFTA does not preempt the Receiver's separate, equitable cause of action for the disgorgement of funds had and received by defendants, and their contention otherwise should be rejected; and the cases on which defendants rely are distinguishable.

## 2

The court begins by considering defendants' argument that TUFTA has "replaced and pre-empted" the Receiver's common law claim for money had and received. Ds. Br. at 28. Defendants primarily rely on Tex. Bus. & Com. Code Ann. § 24.012, which provides that TUFTA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." They posit that "all rights, remedies, and defenses regarding the recovery of fraudulent transfers under Texas law reside within the text of the statute," and "[n]o penumbra of common law rights or equitable principles peaks around the fringes of the statute and provides a right of recovery when a claim under TUFTA fails." Ds. Br. at 28.

Under Texas law, a statute can "modify or abrogate common law rules, but only when that was what the Legislature clearly intended." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015) (citing *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007)). "Because abrogation is disfavored," Texas courts "examine the statute's plain language for the Legislature's clear intention to replace a common law

remedy with a statutory remedy," and they decline "to construe statutes to deprive citizens of common-law rights unless the Legislature clearly expressed that intent." *Id*. (quoting *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969)). A "clear repugnance between the common law and a statutory cause of action is required for courts to find that the Legislature abrogated a common law right." *Id*. (citing *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000).

TUFTA itself includes an express "Supplementary Provisions" section that provides that "[u]nless displaced by the provisions of this chapter, the principles of law and equity . . . supplement its provisions." Tex. Bus. & Com. Code Ann. § 24.011. In other words, the claims and defenses that were available under Texas common law before TUFTA was adopted remain available (and supplement TUFTA) unless they are explicitly displaced by a provision of the statute. *See, e.g., GE Cap. Com., Inc. v. Worthington Nat'l Bank*, 2011 WL 5025153, at *10 (N.D. Tex. Oct. 20, 2011) (Lindsay, J.) ("Section 24.011 of TUFTA expressly allows the defense of estoppel to the extent not displaced by TUFTA."). Defendants do not point the court to any provision of TUFTA in which the Legislature has clearly expressed an intent to displace common law claims for money had and received.[17]

---

[17]To the extent defendants rely on § 24.012, this provision merely reflects that the Texas Legislature adopted TUFTA "with the specific purpose that it be applied uniformly with other states' versions of the Act." *Janvey v. Democratic Senatorial Campaign Comm*., 793 F.Supp.2d 825, 832 n.6 (N.D. Tex. 2011) (Godbey, J.), *aff'd*, 712 F.3d 185 (5th Cir. 2013). Nothing in § 24.012 suggests a clear intention to replace a common law remedy with a statutory remedy. *See Abutahoun*, 463 S.W.3d at 51.

In their briefs, defendants cite *Cadle Co. v. Wilson*,[18] in which a Texas court of appeals held that TUFTA preempted the defendant's common law fraudulent transfer claim. *Caudle Co. v. Wilson*, 136 S.W.3d 345, 353 (Tex. App. 2004, no pet.) ("To allow common-law claims for fraudulent transfer . . . would frustrate the express purpose of the legislature in enacting TUFTA."). It does not follow from *Caudle Co.*, however, that TUFTA also bars *all* equitable claims, especially if those claims do not require proof of the same elements as a claim under TUFTA. *See, e.g., Klein v. Beck*, 589 Fed. Appx. 357, 358 (9th Cir. 2015) (mem.). Because the Receiver's claim for money had and received does not require proof of the same elements as his fraudulent transfer claim, *see, e.g., Plains Exploration & Production Co.*, 473 S.W.3d at 302 n.4 ("A cause of action for money had and received is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." (citation and internal quotation marks omitted)), and because defendants do not point to any specific provision of TUFTA that displaces the Receiver's equitable claim for money had and received, the court denies defendants' motion for summary judgment insofar as it is based

---

[18]Defendants also cite *Reagan National Advertising of Austin, Inc. v. Lakeway 620 Partners, L.P.*, 2001 WL 726452, at *8 (Tex. App. 2001, pet. denied), for the proposition that "all rights, remedies, and defenses regarding the recovery of the fraudulent transfers under Texas law reside within the text of the statute." Ds. Br. at 28. This is an overly broad reading of *Reagan National Advertising*, however, and, in any event, that court did not address the question of preemption or the question whether TUFTA displaced common law claims for money had and received.

on the contention that TUFTA preempts this claim.[19]

3

The court next considers defendants' contention that the Receiver cannot recover on his equitable claim for money had and received because he has an adequate legal remedy (i.e., his fraudulent transfer claim under TUFTA).

As noted above, a claim under Texas law for money had and received is equitable in nature. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 203 n.1. Although the Supreme Court of Texas has stated that "some equitable claims or defenses may be supplanted in certain contexts if an adequate legal remedy exists," *id.* (citing *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) ("Like other equitable claims and defenses, an adequate legal remedy may render equitable claims of unjust enrichment and equitable defenses of voluntary-payment unavailable.")), it has not addressed whether the availability of a cause of action under TUFTA constitutes an adequate legal remedy that would preclude a plaintiff from recovering on an equitable claim for money had and received. Because Texas law

---

[19]This conclusion is consistent with other jurisdictions' interpretation of the Uniform Fraudulent Transfer Act ("UFTA"). *See, e.g., Klein*, 589 Fed. Appx. at 357 (holding that Idaho Uniform Fraudulent Transfer Act does not "bar[] all equitable claims, especially if those claims do not require any showing of fraud or misconduct"); *In re Valente*, 360 F.3d 256, 262 (1st Cir. 2004) (holding that "Rhode Island's adoption of the UFTA did not preempt common law remedies applicable to fraudulent transactions"); *Donell v. Keppers*, 835 F.Supp.2d 871, 879 (S.D. Cal. 2011) ("[A] suit under the UFTA is not the exclusive remedy by which fraudulent transfers may be attacked, and common law remedies remain available." (internal quotation marks and citation omitted)); *but cf. United States v. Bame*, 721 F.3d 1025, 1030-31 (8th Cir. 2013) (noting that courts interpreting Minnesota's enactment of the UFTA have "found that fraudulent transfer statutes are an adequate legal remedy which displace unjust enrichment claims.").

governs the Receiver's claim for money had and received[20] and the Supreme Court of Texas

has not ruled on this specific issue, the court must make an *Erie*[21] guess as to how that court

would rule. *See Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564

(5th Cir. 2010) ("In making our *Erie* guess, we look first to those Texas Supreme Court cases

that, while not deciding the issue, provide guidance as to how the Texas Supreme Court

would decide the question[.]").

    "A cause of action for money had and received belongs conceptually to the doctrine

of unjust enrichment." *Amoco Prod. Co.*, 946 S.W.2d at 164 (citation omitted). As this court

has previously explained, "[u]njust enrichment 'is not an independent cause of action but

rather characterizes the result of a failure to make restitution of benefits either wrongfully or

passively received under circumstances which give rise to an implied or quasi-contractual

obligation to repay.'" *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at

*9 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.) (quoting *Doss v. Homecoming Fin. Network,*

*Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App. 2006, pet. denied)). For this reason, Texas courts,

including the Supreme Court of Texas, have held that "when a valid, express contract covers

the subject matter of the parties' dispute, there can be no recovery under a quasi-contract

theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing cases).

---

    [20]"A federal court exercising pendent jurisdiction over state law claims[] must apply
the substantive law of the state in which it sits." *Sommers Drug Stores Co. Emp. Profit
Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989).

    [21]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

"That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Id.* (citing *TransAm. Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App. 1996, writ denied)). In this case, no express agreement governs the subject matter of the parties' dispute. And defendants do not cite any Texas case in which a claim for money had and received was held to be "unavailable" *other than* because of the existence of an express agreement.

Defendants contend that "the Receiver had an adequate legal remedy under TUFTA, subject to proof of the elements and affirmative defenses." Ds. Br. at 29. But as defendants appear to acknowledge, to prevail on his TUFTA claim, the Receiver must prove all of the required elements, including, *inter alia*, that the transfers were made "with the intent to hinder, delay, or defraud the plaintiff." *Taylor v. Trevino*, 2021 WL 347566, at *3 (N.D. Tex. Feb. 2, 2021) (Fitzwater, J.) (quoting *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam)). In contrast, "[a] cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App. 2012, no pet.) (quoting *Amoco Prod. Co.*, 946 S.W.2d at 164). Additionally, "a cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff.'" *Staats v.*

*Miller* 243 S.W.2d 686, 687-88 (Tex. 1951) (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402-03 (1934)).  Because proof of wrongdoing is *not* a required element of the Receiver's money had and received claim, the court disagrees that the availability of a TUFTA claim, which *does* require proof of wrongdoing, constitutes an adequate legal remedy in this case.

Moreover, although the Supreme Court of Texas has not addressed the issue, at least two Texas courts of appeals have stated that "an equitable cause of action for money had and received cannot be denied merely because plaintiff may have other remedies to cover its loss." *Acoustical Screens in Color, Inc. v. T.C. Lordon Co.*, 524 S.W.2d 346, 350 (Tex. App. 1975, writ ref'd n.r.e.); *see also First Nat'l Bank of Mineola, Tex. v. Farmers & Merchants State Bank of Athens, Tex.*, 417 S.W.2d 317, 331 (Tex. App. 1967, writ ref'd n.r.e.) ("Plaintiff's cause of action [for money had and received] cannot be eliminated merely because it may have other remedies to reimburse its loss."); *cf. King v. Tubb*, 551 S.W.2d 436, 443 (Tex. Civ. App. 1977, no pet.) ("In addition to the trial court's separate holdings of recovery under fraud and assumpsit, [plaintiffs] are also entitled to a recovery under a combination of both theories.").  And as discussed in detail above, *see supra* § VI (B)(2), the language of TUFTA clearly contemplates that common law claims, including equitable causes of action such as money had and received, will "supplement" the statute.

Given the flexibility that Texas courts afford plaintiffs in pleading and proving a claim for money had and received, the absence of a requirement that plaintiffs show fraud or misconduct to prevail on a claim for money had and received, the cases decided by Texas

courts of appeals that uphold claims for money had and received despite the availability of other remedies, and the language in TUFTA expressly permitting principles of equity to "supplement" claims brought under TUFTA, the court predicts that the Supreme Court of Texas would conclude that the availability of a TUFTA cause of action does not necessarily preclude the Receiver's claim for money had and received. Accordingly, the court declines to grant defendants' motion for summary judgment on this basis.

VII

Defendants next move for summary judgment on the Receiver's claim for money had and received based on the voluntary payment rule.

A

Under Texas law, "[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *BMG Direct Mktg., Inc.*, 178 S.W.3d at 768 (quoting *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (1951)). This rule, known as the "voluntary payment rule," is "a defense to claims asserting unjust enrichment; that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense." *Id.* (citation omitted). The goal of the voluntary payment rule is to prevent one party from "leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back." *Id.* at 768-69. Because "public policy favors protecting the finality of payments

- 33 -

when a person is aware of all the facts upon which the liability to make payment depends, and there is no fraud, deception, duress, or coercion involved . . . [Texas courts] have, at times, applied the voluntary-payment rule between private parties." *Id.* at 769 (citing cases). Defendants bear the burden of conclusively establishing the voluntary payment defense. *Dall. Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 871 (Tex. 2005); *see also Metro. Life Ins. Co. v. Battle*, 2018 WL 3438913, at *4 (N.D. Tex. July 17, 2018) (Fitzwater, J.) ("The voluntary payment rule is an affirmative defense on which [defendant] will have the burden of proof at trial.").

B

The Receiver and defendants primarily dispute whether the intent of Faulkner, Parker Hallam ("Hallam"), and Dustin Michael Miller Rodriguez ("Miller") (the individuals who controlled the Receivership Entities)[22] should be imputed to the Receivership Entities for purposes of the voluntary payment rule.  In support of their summary judgment motion, defendants argue, *inter alia*, that the Receivership Entities intentionally paid them for their telemarketing work and that "[r]egardless of, and because of, the greedy and dishonest personal motivations of Faulkner, [Hallam, and Miller], the Receivership Entities paid

---

[22]According to the amended complaint, after the reverse merger through which BOG and BRC acquired Bering Exploration Faulkner, Hallam, and Miller owned over 90% of BECC's common stock through their ownership of BOG and BRC.  Am. Compl. at ¶ 22. Hallam and Miller were also corporate officers for Crude and Crude Royalties, and Miller was the primary officer for Patriot.  While Faulkner coordinated Breitling's operations and managed much of the business, Hallam and Miller led the sales efforts and managed Breitling's staff and, along with defendants, disseminated Breitling's materially misleading offering memoranda for the BOG, BRC, Crude, and Patriot offerings.

- 34 -

Defendants voluntarily to keep them working the phones and contacting potential investors." Ds. Br. at 31-32. Although it appears to be undisputed that *Faulkner* voluntarily paid defendants, *see* Am. Compl. at ¶ 43 (alleging that the transfers at issue "were made to Defendants by Faulkner (through the entities under his control) with actual intent to defraud creditors of Breitling,"), the court disagrees that defendants have established beyond peradventure that the *Receivership Entities* paid them voluntarily.

In arguing that the voluntary payment defense bars the Receiver's claim for money had and received, defendants ignore the existence of the receivership, essentially asking the court to treat Faulkner and the Receivership Entities as one and the same. But in the context of a federal equity receivership, once a receiver has been appointed, "the knowledge and effect of [a] Ponzi scheme principal's fraudulent transfers *may not be attributed to his robotic corporate tools*." *DSCC*, 712 F.3d 192 (emphasis added). This is because the receivership entities, i.e., the "robotic tools" of the Ponzi scheme principal, are "distinct legal entities with separate rights and duties." *Id*. at 190 (quoting *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008)). Thus "the knowledge and effects of the fraud of the principal of a Ponzi scheme in making fraudulent conveyances of the funds of the corporations under his evil coercion *are not imputed to his captive corporations*." *Id.* (emphasis added). "[O]nce freed of his coercion by the court's appointment of a receiver, the corporations in receivership, through the receiver, may recover assets or funds that the principal fraudulently diverted to third parties without receiving reasonably equivalent value." *Id.*; *see also, e.g., Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) ("The distinction between a corporation

- 35 -

and its officers or agents is reinforced by the appointment of a receiver.  A receiver is 'the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property of the receivership.'" (quoting *Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 158 (Tex. 1944))).

Defendants contend that "[t]he Receiver pleads that the Receivership Entities knowingly paid bonuses to Defendants, with full knowledge that they were receiving commission-based compensation, as part of a fraudulent scheme to deceive investors."  Ds. Br. at 31.  But defendants ignore the Receiver's allegation that the transfers at issue "were made to Defendants *by Faulkner* (through the entities under his control) with actual intent to defraud creditors of Breitling."  Am. Compl. at ¶ 43 (emphasis added).  In other words, the Receiver alleges that *Faulkner used* the Receivership Entities to fraudulently divert funds from Breitling's creditors to defendants.  This is the type of conduct that resulted in the appointment of the Receiver in the first place.  It is clearly established that a corporation in receivership is treated as "an entity separate from its individual bad actors."  *Jones*, 666 F.3d at 966; *see also, e.g., Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("Once a receiver takes control of a corporation whose officers ran a Ponzi scheme, the corporation is liberated from the control of those wrongdoers.").  Defendants have failed to establish beyond peradventure that it was the Receivership Entities, as distinguished from Faulkner, who "voluntarily paid" defendants' salaries and bonuses.

Defendants contend in reply that, while the panel in *DSCC* held that the knowledge of a Ponzi scheme principal is not imputed to the corporation in receivership "*for purposes*

- 36 -

*of fraudulent transfer claims*[,] . . . [t]he Court in *DSCC* did not hold that the knowledge and

intent of the corporate officers who run corporations in receivership should [not be] imputed

to them for other purposes."  Ds. Reply at 18-19.  Defendants also maintain that

> [n]either the Fifth Circuit nor the Northern District holds that . . . knowledge and intent of corporation officers is not imputed to the corporation except as to whether the receiver should be imputed with knowledge of the fraudulent transfers for purpose of TUFTA Section 24.010(a).  Otherwise, the issue of imputation [of] knowledge to a corporation in receivership is properly left to state law, as indicated by the Supreme Court in *O'Melveny & Myers* [*v. FDIC*, 512 U.S. 79, 87-89 (1994)].

Ds. Reply at 21.[23]

Defendants have failed to adequately demonstrate *why* the rationale of *DSCC* does not

also apply to their voluntary payment affirmative defense.  Defendants maintain that, if the

court extrapolated the holding from *DSCC*, "it would mean the Receivership Entities did not

have the legal capacity to form contracts or make binding agreements with anyone, including

landlords, utilities, the Postal Service, Fed-Ex, the copy machine lessor, or the janitorial

staff."  Ds. Reply at 19.  Defendants have failed, however, to cite any supporting authority

for this proposition.  *DSCC* holds that, in the federal receivership context, "the knowledge

and effect of [a] Ponzi scheme principal's fraudulent transfers may not be attributed to his

robotic corporate tools," and that the receiver "may recover assets or funds that the principal

fraudulently diverted to third parties."  *DSCC*, 712 F.3d at 190, 192.  Like the Receiver's

---

[23]In *O'Melveny* the Supreme Court held that state law, rather than federal common law, "determines whether the knowledge of corporate officers acting against the corporation's interest will be imputed to the corporation."  *O'Melveny*, 512 U.S. at 83.

- 37 -

TUFTA claim (also a state law claim), the Receiver's claim for money had and received is based on the allegation that defendants received the transfers at issue "through the taking of undue advantage vis-à-vis the investors in the Breitling fraudulent scheme."  Am. Compl. at ¶ 61.  Defendants have failed to establish that the rationale of *DSCC* does not apply to the Receiver's claim for money had and received (and to defendants' affirmative defense of voluntary payment), or that applying the reasoning of *DSCC* to a state-law claim for money had and received will result in the sort of far-reaching, untoward consequences that they predict.[24]

## C

Defendants maintain that the Receiver's argument that the Receivership Entities were incapable of paying any debt "voluntarily" because the control persons were running a securities fraud for their own personal benefit "fails for multiple reasons."  Ds. Br. at 37.

They first argue that when payment is not "made due to mistake of fact by the payor, or fraud, deception, coercion, or duress by the payee[,] . . . [s]uch a payment is 'voluntary'

---

[24]Furthermore, to the extent that defendants contend that "[t]he Receiver cites no Texas law for the proposition that the knowledge of corporation officers should not be imputed to the Receivership Entities for purposes of the voluntary payment rule or other common law defenses to his Texas state law claims," D. Reply at 21, it is not the Receiver's burden to make this showing.  Instead, defendants are obligated at the summary judgment stage to establish beyond peradventure that Faulkner's knowledge and intent can be imputed to the Receivership Entities.  As explained above, defendants have not made this showing and therefore are not entitled to summary judgment based on the voluntary payment affirmative defense.

as a matter of law,"[25] and that "[t]he Texas Supreme Court has not recognized the subjective, private motivations of the persons who controlled the payor as an exception to the rule." *Id.* Although the court does not necessarily disagree with defendants' characterization of Texas law at a general level, the court nevertheless declines to grant summary judgment based on the voluntary payment defense given the context of the claim at issue. The Supreme Court of Texas has not yet addressed whether transfers by an entity that is under the control of an individual who is orchestrating a massive fraud scheme can ever constitute "voluntary payments" for purposes of the voluntary payment rule. The Fifth Circuit, however, has clearly held that "the knowledge and effects of the fraud of the principal of a Ponzi scheme in making fraudulent conveyances of the funds of the corporations under his evil coercion *are not imputed to his captive corporations*." *DSCC*, 712 F.3d at 190 (emphasis added). Because the claim at issue here arises in the context of a federal equity receivership, and because defendants have neither pointed to contrary authority nor adequately explained why the Fifth Circuit's holding in *DSCC* should be limited only to claims brought under TUFTA, the court follows *DSCC* and holds that defendants have failed to establish as a matter of law

---

[25]Defendants argue extensively that the evidence shows that the Receivership Entities were not defrauded, deceived, coerced, or subjected to duress by defendants. *See* Ds. Br. at 31-36. While it is true that there does not appear to be any evidence that defendants defrauded, deceived, coerced, or subjected the Receivership Entities to duress, defendants' argument to that effect is beside the point. Because defendants have produced no evidence to refute the Receiver's contention that the Receivership Entities did not act independently in transferring the funds at issue to defendants but were instead controlled by Faulkner and others, the court concludes, for the reasons explained, that defendants are not entitled to summary judgment based on the voluntary payment affirmative defense.

that the Receivership Entities "voluntarily paid" defendants.

Defendants next argue that "as salaried employees, [they] were entitled to rely on the actual (as well as apparent) authority of the corporate officers (their bosses) as being authorized acts of the companies." Ds. Br. at 39. Defendants are correct that, under Texas law, a corporation may act only through its agents, *see, e.g., Prudential Insurance Co. of America v. Financial Review Services, Inc*., 29 S.W.3d 74, 79 (Tex. 2000), and that, generally, the actions of a corporate agent on behalf of a corporation are deemed to be acts of the corporation, *see, e.g., Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). But even if the acts of Faulkner, Hallam, and Miller in transferring funds to Trevino, Eagle Rio, and Okpo "were acts of the Receivership Entities," Ds. Br. at 39, defendants still have not established beyond peradventure that the Receivership Entities acted *voluntarily* in transferring the funds.

Nor is the court persuaded by defendants' argument that the Receiver cannot simultaneously pursue his claim under TUFTA and defeat defendants' voluntary payment defense. In support of this argument, defendants contend that

> [l]ogically, the only way for the Receiver to argue that the payments made to Defendants were not "voluntary" is to say the Receivership Entities were not capable of having any knowledge or forming their own intent. . . . Aside from the silliness of the argument that the Receivership Entities were innocent and not liable for their frauds and violations of securities law, the argument contradicts the central allegation of the Receiver's claim under TUFTA . . . [that] the transfers were made to Defendants by Faulkner (through entities under his control) and with actual intent to hinder delay or defraud creditors of Breitling.

- 40 -

Ds. Br. at 39-40 (citations omitted).  The court disagrees that there is contradiction in arguing, for purposes of TUFTA, that the transfers were made by Faulkner through the entities under his control and that the entities themselves did not voluntarily pay defendants' bonuses and salaries.  A reasonable jury could find that it was Faulkner who acted voluntarily in paying defendants.  The Receivership Entities, in the words of the Fifth Circuit, were merely "[Faulkner]'s robotic tools."  *DSCC*, 712 F.3d at 190.  They did not act of their own volition, and once they were "[f]reed from [Faulkner's] spell," the Receivership Entities "became entitled to the return of the moneys . . . that [Faulkner] had made [them] divert to unauthorized purposes."  *Id.* at 190-91.

Finally, the court rejects defendants' argument that, because Faulkner, Hallam, and Miller did not defraud the Receivership Entities but instead used the Receivership Entities to defraud the investing public (which directly benefited the Receivership Entities and indirectly benefited them as control persons and beneficial owners) Faulkner's knowledge and intent are imputed to the Receivership Entities for purposes of the Receiver's TUFTA claim, the voluntary payment rule, and limitations.

As a preliminary matter, defendants have not established beyond peradventure that Faulkner, Hallam, and Miller did not defraud the Receivership Entities.  But regardless, "it is well established that 'when the receiver acts to protect innocent creditors . . . he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so.'"  *Jones*, 666 F.3d at 966 (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. E-Court, Inc.*, 2003 WL 21025030, at *5 (Tex. App. 2003, no pet.)).  Thus

even if defendants are correct that Faulkner and others used the Receivership Entities to defraud the investing public while at the same time benefiting the entities, defendants have not shown that these facts would permit a reasonable jury to impute Faulkner's knowledge to the Receivership Entities for purposes of defending against the Receiver's claim for money had and received, or for the court to conclude as a matter of law that the payments to defendants were voluntarily made.

D

Defendants "ha[ve] the burden of conclusively establishing [the] defense of voluntary payment." *Dall. Cmty. Coll. Dist.*, 185 S.W.3d at 871. Because defendants have not established beyond peradventure that the Receivership Entities voluntarily paid defendants' bonuses and salaries, the court denies defendants' motion for summary judgment based on the voluntary payment rule.

VIII

Defendants also move for summary judgment on the Receiver's claim for money had and received based on limitations.

A

Defendants maintain that Texas cases are split as to whether the statute of limitations for money had and received is two or four years but that because the Receiver alleges specific wrongdoing, the Receiver's money had and received claim falls squarely within the two -year statute of limitations in Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); the cause of action for money had and received accrued, and the two-year statute of limitations began

to run, each time defendants received a payment from the Receivership Entities, since all such payments were wrongful; because all transfers to Trevino and Eagle Rio were made on or before June 2, 2014, which was more than two years before the court appointed the Receiver for Faulkner, BOG, and BECC, the Receiver's money had and received claim against Trevino and Eagle Rio is barred by the statute of limitations; all transfers made to Okpo before August 10, 2015 are barred by the two-year statute of limitations; and the tolling provisions of the court's Receivership Order did not apply to the payments to Okpo that occurred between August 10, 2015[26] and February 8, 2016 because these payments came from "Simple Solution, Inc., d/b/a/ Crude Energy or Patriot Energy" (and not from BECC or BOG), and Patriot did not become a "Receivership Defendant," as that term is defined in the Receivership Order, until September 12, 2018 (in other words, the two year statute of limitations on the Receiver's money had and received claim against Okpo expired as to the last payment on February 8, 2018, six months before tolling commenced).

The Receiver responds that, regardless whether a two- or four-year statute of limitations applies, the Receiver's claim for money had and received is not time-barred because the discovery rule applies; the Receiver could not possibly have learned of the existence and nature of the facts underlying count II before he was appointed as Receiver;

---

[26]Defendants assert in their brief that "[t]he payments to Okpo August 10, *2017* and February 8, 2016 came from Simple Solution, Inc., d/b/a/ Crude Energy or Patriot Energy, not from BECC or BOG."  Ds. Br. at 47 (emphasis added).  The court assumes that the reference to *2017* is intended to be *2015* since August 10, *2015* is two years prior to the date the Receiver was appointed, and defendants argue that all transfers made before August 10, 2015 are shielded by the statute of limitations.

the Receiver's claims could not have accrued, as a matter of law, until after he was appointed; on the Receiver's appointment, the accrual of any causes of action was further tolled to enable to the Receiver to investigate and discover the nature and extent of the Breitling fraudulent scheme and any claims that the Receivership Estate held against others; and the discovery rule therefore applies to the Receiver's claim for money had and received, and any statute of limitations with respect to that cause of action was tolled prior to the Receiver's initiation of this lawsuit.

Defendants reply that the two-year statute of limitations expired as to all payments received before the Receiver was appointed for the entity that made the payments; the discovery rule does not apply because it cannot resurrect a claim already expired; the money had and received claims are not fraudulent transfer claims and thus do not fall within the narrow exception to imputation of knowledge set forth by the Fifth Circuit in *DSCC* for fraudulent transfer claims; the Receiver has the same rights that the Receivership Entities would have had on the day of his appointment; the Receivership Entities knew about their payment to defendants at the time they occurred, and if they believed that the money should not have been paid, they could have filed an action for money had and received to recover it; and, in sum,

> [t]he two (2) year statute expired as to each payment before the Receiver was appointed. The Receiver stepped into the Receivership Entities' shoes upon his appointment and acquired no greater rights. The claims were time-barred as a matter of law before any tolling started. Thus, on the dates of Receiver's appointment, there was nothing for him to "discover."

Ds. Reply at 24.

B

"Under Texas law, limitations is an affirmative defense on which the [summary judgment] movant bears the burden of proof." *Elmo v. Oak Farms Dairy*, 2008 WL 2200265, at *1 (N.D. Tex. May 14, 2008) (Fitzwater, C.J.) (citing *Moriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex. App. 1997, no writ)). Accordingly, to be entitled to summary judgment based on limitations, defendants "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A.*, 878 F. Supp. at 962 (quoting *Fontenot*, 780 F.2d at 1194).

The Receiver maintains that defendants are not entitled to summary judgment based on limitations because he has pleaded the discovery rule with respect to his claim for money had and received and raises it again in his summary judgment response. Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008). It provides that the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff." *Weaver v. Witt*, 561 S.W.2d 792, 793-94 (Tex. 1977). The discovery rule tolls the statute of limitations only if the injury is both inherently undiscoverable and objectively verifiable. *K3C Inc. v. Bank of Am., N.A.*, 204 Fed. Appx. 455, 462 (5th Cir. 2006) (per curiam) (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). An injury is inherently undiscoverable if it is of a type not generally

- 45 -

discoverable by the exercise of reasonable diligence.  *See HECI Expl.*, 982 S.W.2d at 886.

C

The Receiver has pleaded that the discovery rule applies, and defendants have not negated the application of the discovery rule "by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury."  *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, 2004 WL 57215, at *6 (N.D. Tex. Jan. 5, 2004) (Fitzwater, J.) (quoting *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)).  The court therefore concludes that defendants have failed to meet their heavy burden to establish beyond peradventure that the Receiver's claim for money had and received is barred by either a two- or four-year statute of limitations.[27]

In *DSCC* the Fifth Circuit rejected the defendants' argument that "knowledge of the fraudulent transfers were imputed to the [receivership entities] so as to bar the Receiver from asserting their claims to set aside the fraudulent transfers to the [defendants]."  *DSCC*, 712 F.3d at 193.  Like defendants here, the defendants in *DSCC* argued that, "because the [receivership entities] had knowledge of the contributions when they were made," TUFTA's four-year statute of repose and one-year discovery period "elapsed before the Receiver was appointed in 2009."  *Id.*  The panel rejected this argument, explaining that, "[b]ecause the

---

[27]Because the court concludes that defendants are not entitled to summary judgment based on a limitations affirmative defense, it need not resolve whether the Receiver's claim for money had and received is subject to a two- or four-year statute of limitations.

- 46 -

[receivership entities] were the robotic tools of Stanford's Ponzi scheme, knowledge of the fraud could not be imputed to them while they were under Stanford's coercion." *Id.* The panel held that none of the receiver's claims could have arisen before the date the receiver was appointed, and that the defendants had failed to conclusively prove the defense of limitations "because they presented no evidence to show that the Receiver knew or could reasonably have known for more than one year prior to filing suit that the donations . . . were fraudulent conveyances that had been made during the operation of a Ponzi scheme and using funds from the [receivership entities] that were proceeds of that scheme." *Id.*

Like the receiver in *DSCC*, the Receiver here alleges that he could not have discovered the Receivership Entities' claim for unjust enrichment until after Faulkner was removed from control of the Breitling entities and the Receiver had time to discover any claims.[28]  The Receiver alleges that he

> was only able to discover that the Defendants hold, and were unjustly enriched by, funds which in equity and good conscience belong to BOG, BRC, Crude Energy, and Patriot after Faulkner was removed from control of the Breitling entities and after a time consuming and extensive review of thousands of pages of paper and electronic records and documents relating to the Breitling entities.

Am. Compl. at ¶ 65.  And like the defendants in *DSCC*, defendants here have failed to

---

[28]Although the Receiver does not raise this argument, the court notes that "[u]nder the common law doctrine of adverse domination, the statute of limitations for an entity's claim is tolled when the entity is controlled or dominated by individuals engaged in conduct that is harmful to the entity." *Warfield v. Carnie*, 2007 WL 1112591, at *15 (N.D. Tex. 2007) (Buchmeyer, J.) (citing, *inter alia*, *FDIC v. Dawson*, 4 F.3d 1303 (5th Cir. 1993)).

produce any evidence, or even to argue, that the Receiver discovered or should have discovered his claim for unjust enrichment more than two (or four) years prior to the date he filed suit.

Without citing any supporting authority, defendants contend that "[t]he money had and received claims are not fraudulent transfers claims and do not fall within the narrow exception to imputation of knowledge set forth in *DSCC for fraudulent transfer claims.* Rather, ordinary Texas law applies." Ds. Reply at 24. But as with their voluntary payment defense, defendants have again failed to explain why the rationale of *DSCC* is inapplicable to defendants' money had and received claim. Both claims arise under Texas law, and both are premised on evidence that Faulkner transferred funds that belonged to the Receivership Entities' creditors. Defendants have failed to establish that *DSCC* is inapplicable to the instant case.

Because defendants have failed to introduce any evidence to negate the application of the discovery rule, much less evidence to establish beyond peradventure that the discovery rule does not apply, the court denies defendants' motion for summary judgment based on the affirmative defense of limitations.

IX

The court now turns to dependants' request for attorney's fees under TUFTA.

A

Defendants contend that they should be awarded reasonable attorney's fees under Tex. Bus. & Com. Code Ann. § 24.013 because the Receiver's TUFTA claims were extinguished

by the statute of repose, the Receiver's claim for money had and received is barred by the voluntary payment rule and the applicable statute of limitations, and "Defendants have been forced to incur substantial attorneys' fees and costs to defend against meritless claims that should not have been filed." Ds. Reply at 25.  The Receiver responds, *inter alia*, that there is no allegation of bad faith on his part and that it would be neither equitable nor just to award attorney's fees and costs to defendants "for no other reason than that they are a prevailing party in ths action." P. Br. at 18.

## B

TUFTA provides that "the court may award costs and reasonable attorney's fees as are equitable and just."  Tex. Bus. & Com. Code Ann. § 24.013.  "This provision of TUFTA gives the trial court the sound discretion to award attorney's fees based on the evidence the trial court heard."  *Janvey v. Dillon Gage, Inc. of Dall.*, 856 F.3d 377, 392 (5th Cir. 2017) (quoting *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App. 2007, no pet.)).  "The Court's exercise of this discretion is subject to the following limitations: any fees awarded must be reasonable and necessary, and must also be equitable and just."  *Id.* (quoting *Janvey v. Romero*, 2015 WL 11017950, at *1 (N.D. Tex. Sept. 22, 2015) (Godbey, J.), *aff'd*, 817 F.3d 184 (5th Cir. 2016)).

> A number of factors are relevant to determining whether a fee award is "equitable and just" under TUFTA, including: (1) whether the case involved egregious conduct; (2) whether an award of fees accomplishes the goals of TUFTA; (3) the evidence heard by the trial court; and (4) evidence of bad faith, vexation, wantonness, oppression, or harassment relating to the filing or the maintenance of this action.

- 49 -

*Id.* at 393 (citations omitted).

The court in its discretion declines to award attorney's fees at this time. The Receiver's claims have not been shown to be frivolous, unreasonable, or without foundation. Nor is there any evidence of bad faith, vexation, wantonness, oppression, or harassment relating to the filing or maintenance of this action. Instead, the Receiver's TUFTA claim represents the most likely avenue by which he can fulfill his goal of maximizing recovery to make whole the investors in Faulkner's fraudulent scheme. *See, e.g., id.* (affirming district court's denial of defendant's request for attorney's fees under TUFTA on the ground that "the goals of the receivership are best served when the receiver brings claims similar to those brought in this litigation—namely non-frivolous claims."). Accordingly, the court concludes that an award at this time of attorney's fees for Trevino, Eagle Rio, and Okpo would not be equitable and just, and it denies defendants' summary judgment motion to the extent they seek such an award.

\*   \*   \*

Accordingly, for the reasons explained, the court grants in part and denies in part the motion for summary judgment filed by Trevino, Eagle Rio, and Okpo.

**SO ORDERED**.

October 29, 2021.

_____

SIDNEY A. FITZWATER
SENIOR JUDGE